IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

MICHAEL A. WEBBER,

        Petitioner,

    v.

D. MILLS, Superintendent, Two
Rivers Correctional Institution,

        Respondent.

Civil No. 3:09-cv-00170-AC

FINDINGS AND RECOMMENDATION

    MICHAEL A. WEBBER
    SID #12362542
    Two Rivers Correctional Institution
    82911 Beach Access Road
    Umatilla, OR  97882

        Petitioner *Pro Se*

    ELLEN F. ROSENBLUM
    Attorney General
    NICHOLAS M. KALLSTROM
    Assistant Attorney General
    Department of Justice
    1162 Court Street NE
    Salem, OR  97301

        Attorneys for Respondent

1 - FINDINGS AND RECOMMENDATION -

ACOSTA, Magistrate Judge.

Petitioner, an inmate at the Two Rivers Correctional Institution, brings this habeas corpus action pursuant to 28 U.S.C. § 2254 *pro se*. Currently before the Court is Petitioner's Second Amended Petition for Writ of Habeas Corpus (#55). For the reasons that follow, the Second Amended Petition for Writ of Habeas Corpus should be DENIED.

## BACKGROUND

On March 31, 1997, a Clackamas County grand jury indicted Petitioner on charges of Murder and Unauthorized Use of a Vehicle. Four years earlier, on or between February 1, and February 3, 1993, Petitioner had stabbed his father to death and then fled to Mexico in his father's vehicle. Petitioner was 19 at the time of the killing. An autopsy of the victim revealed over 20 stab wounds.

Petitioner lived in Mexico for four years before he was brought to the attention of Mexican immigration authorities, who deported him as an undesirable alien. Two police officers from Clackamas County transported Petitioner from Mexico to Los Angeles, and then back to Oregon.

The case was tried to a jury. At trial, Petitioner did not deny killing his father, but claimed he did so in self-defense. Petitioner based his self-defense argument on the affirmative defense of Extreme Emotional Disturbance as a result of having been physically abused by the victim when Petitioner was a child.

The jury convicted Petitioner on both charges. On the Murder charge, the trial judge sentenced Petitioner to 10 years of imprisonment under Or. Rev. Stat. § 163.115(3)(b) and fifteen years under Or. Rev. Stat. §   163.115(3)(c), to be served consecutively for a total of 25 years

without the possibility of parole. On the Unauthorized Use of a Motor Vehicle charge, the trial judge sentenced Petitioner to six months of imprisonment, to be served concurrently with the Murder sentence.

Petitioner filed a direct appeal. He asserted a single assignment of error, that the trial court erred when it excluded groups of prospective jurors by pre-screening the jury pool. The Oregon Court of Appeals affirmed from the bench, and the Oregon Supreme Court denied review. *State v. Webber*, 173 Or. App. 300, 21 P.3d 664 (2001), *rev. denied*, 333 Or. 655, 45 P.3d 448 (2002).

Petitioner then sought state post-conviction relief ("PCR"). Following an evidentiary hearing, the state PCR trial judge denied Petitioner's *Pro Se* Petition for Post-Conviction Relief. On appeal, the Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review. *Webber v. Hall*, 221 Or. App. 702, 191 P.3d 813 (2008), *rev. denied*, 345 Or. 618, 201 P.3d 910 (2009).[1]

On February 9, 2009, Petitioner filed his Petition for Writ of Habeas Corpus in this Court. The Court appointed counsel to represent Petitioner. On September 18, 2009, appointed counsel filed an Amended Petition for Writ of Habeas Corpus and a Motion for Order Permitting Juror Interview.[2]

On November 17, 2009, this Court granted appointed counsel's Motion to Withdraw due to a breakdown in the attorney-client relationship. A second attorney was appointed to represent

_____

[1] Petitioner filed two subsequent state PCR proceedings, both of which were summarily dismissed as successive and/or untimely; the state courts did not address the merits of Petitioner's claims in either case. Resp. Exhs. 132-149.

[2] The Motion for Order Permitting Juror Interview is resolved by separate Order entered this date.

3 - FINDINGS AND RECOMMENDATION -

Petitioner. On May 25, 2010, the Court granted Petitioner's *pro se* motion to remove the second attorney as counsel, and ordered Petitioner to proceed *pro se*.

On September 9, 2010, Petitioner filed his *pro se* Second Amended Petition for Writ of Habeas Corpus. Petitioner alleges 42 separate grounds for relief, many of which include several sub-grounds. Because of the sheer number of grounds for relief alleged by Petitioner and the narrative form in which he presented them, the Court declines to list them verbatim here.

## DISCUSSION

### I.    Procedural Default

#### A.    Legal Standards

A habeas petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of those claims. *See* 28 U.S.C. § 2254(b)(1)(A). *Rose v. Lundy*, 455 U.S. 509, 519 (1982). "As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'affording the state courts a meaningful opportunity to consider allegations of legal error.'" *Casey v. Moore*, 386 F.3d 896, 915–916 (9th Cir. 2004) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257, (1986)).

A petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level at all. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim

unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court, or makes a colorable showing of actual innocence. *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Sawyer v. Whitley*, 505 U.S. 333, 337 (1992); *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

### B.    Analysis

#### 1.    Trial Errors

In his Second Amended Petition for Writ of Habeas Corpus, Petitioner raises several grounds and sub-grounds alleging trial court errors. Under Oregon law, trial court errors are properly raised during Petitioner's trial and direct appeal. *See Palmer v. State*, 318 Or. 352, 356-58, 867 P.2d 1368 (1994) (state PCR petitioners generally may not raise claims in PCR proceedings that could have been raised during the underlying criminal proceeding and direct appeal, unless they assert that failure to raise the claim constituted inadequate assistance of counsel); *see also Kellotat v. Cupp*, 719 F.2d 1027, 1030 (9th Cir. 1983) (in Oregon, most trial court errors must be raised by direct appeal to the Oregon Court of Appeals).

Here, Petitioner raised just one issue in his direct appeal: that the trial court erred in pre-screening the jury pool under juror exclusion provisions of state law. As such, this is the only claim of trial court error "fairly" presented to the Oregon Court of Appeals and the Oregon Supreme Court. Petitioner procedurally defaulted all other claims of trial error alleged in his Second Amended Petition.

### 2.    State PCR Claims

To exhaust claims of ineffective assistance of counsel and prosecutorial misconduct, a petitioner must raise them in the state PCR petition. Under Or. Rev. Stat. § 138.550(3), all grounds for relief not raised in the original or amended PCR petition are deemed waived. If a claim is not alleged in the original or amended PCR petition, it cannot be raised on appeal to the Oregon Court of Appeals. *See* Or. R. App. P. 5.45(1) (no error will be considered on appeal unless it was preserved in the lower court, provided that the appellate court may consider errors of law apparent on the face of the record); *see also Leyva-Grave-de-Peralta v. Blacketter*, 232 Or. App. 441, 448, 223 P.3d 411 (2009) (refusing to address claim not pleaded in the petition for post-conviction relief), *rev. denied*, 348 Or. 114 (2010). Likewise, in order to fairly present a claim to the Oregon Supreme Court, it must first have been raised before the Oregon Court of Appeals. Or. R. App. P. 9.20(2); *see also Castille*, 489 U.S. at 351-352 (claim not fairly presented when raised for the first time for review to state supreme court).

Thus, in order to properly exhaust ineffective assistance of counsel and prosecutorial misconduct claims, a petitioner must have raised them at all three levels of state court. Those claims not exhausted are procedurally defaulted. Ineffective assistance of counsel claims are discrete, and each separate claim must be properly exhausted or it will be defaulted. *Carriger v. Lewis*, 971 F.2d 329, 333-34 (9th Cir. 1992).

In his state PCR proceeding, Petitioner alleged multiple claims of ineffective assistance of trial and appellate counsel and multiple claims of prosecutorial misconduct. On appeal, appointed counsel filed a brief asserting five claims of error by the PCR trial court. Of these, three of the

claims pertained to the procedure in the PCR trial court and are not grounds for federal habeas

relief. The remaining assignments of error allege trial counsel was constitutionally ineffective

because counsel (1) failed to request a jury instruction for manslaughter as a lesser-included

offense; and (2) erroneously informed the jury during closing argument that the defendant bore the

burden of proving that he acted in self defense.

Petitioner filed a *Pro Se* Supplemental Brief in which he alleged fourteen claims of

ineffective assistance of trial counsel, two of which duplicated the claims alleged in the brief filed

by appointed counsel. Petitioner also alleged three claims of ineffective assistance of appellate

counsel. Petitioner did not raise any claims of prosecutorial misconduct.

Of the claims alleged in both briefs, only eleven of the fourteen trial counsel claims and

none of the appellate counsel claims had been included in Petitioner's PCR petition and were also

presented to the Oregon Supreme Court in a formal Petition for Review and *Pro Se* Supplemental

Petition for Review. Accordingly, with respect to the claims alleged in the Second Amended

Petition for Writ of Habeas Corpus before this Court, ten were fully exhausted:[3]

1.      Trial counsel provided ineffective assistance of counsel by not effectively
        investigating and arguing for suppression of evidence resulting from the
        interrogation and search of Petitioner's home in Mexico.

2.      Trial counsel provided ineffective assistance of counsel by not immediately
        asserting to police that petitioner had the right to silence and an attorney and
        by not immediately advising petitioner to exercise those rights.

---

[3]Because each of the ten claims as alleged in the Amended Petition contain
additional excessive verbiage, the Court recognizes and adopts (with some slight revision)
Respondent's succinct summarization thereof, and re-numbers the claims for ease of
reference.

3.  Trial counsel provided ineffective assistance of counsel by not effectively arguing for suppression of the pretrial interrogation.

4.  Trial counsel provided ineffective assistance of counsel by not effectively arguing for discovery of pretrial interrogation police notes for impeachment purposes.

5.  Trial counsel provided ineffective assistance of counsel by not advising Petitioner of his right to be present at plea negotiations, colloquy of counsels, in-chambers discussions, or preserving them on the record.

6.  Trial counsel provided ineffective assistance of counsel by not advising Petitioner that the judge decided the state could not introduce into evidence Petitioner's juvenile record and then mis-advising Petitioner that it could and would, and that the defense should do so first to diffuse any prejudice.

7.  Trial counsel provided ineffective assistance of counsel by unilaterally asserting the defense of extreme emotional distress and failing to request that the jury be instructed on the lesser-included offense of manslaughter.

8.  Trial counsel provided ineffective assistance of counsel by misstating the defense burden on extreme emotional distress in his closing argument.

9.  Trial counsel provided ineffective assistance of counsel by not objecting to and rebutting certain statements the prosecutor made in closing argument.

10. Trial counsel provided ineffective assistance by not arguing Petitioner's sentence was illegal because the trial judge did not find aggravating facts on the record to justify a departure sentence.

All other claims alleged by Petition in his Second Amended Petition, including the claims of ineffective assistance of appellate counsel and prosecutorial misconduct, are procedurally defaulted.

### 3.    Excuse for Procedural Default

Petitioner does not argue cause and prejudice to excuse his procedural default. In his 42nd ground for relief, however, Petitioner alleges he is "actually innocent" of the crime of Murder. To

the extent Petitioner argues his actual innocence is a fundamental miscarriage of justice sufficient to excuse his procedural default, Petitioner fails to make a sufficient showing.

A claim of actual innocence can excuse a procedural default where the petitioner introduces new evidence of his factual innocence such that, in light of that new evidence, no reasonable juror would have convicted him. *Schlup v. Delo*, 513. U.S. 298, 327 (1995). Petitioner has not introduced new evidence of his innocence, thus he cannot excuse his default.[4]

## II.    Relief on the Merits

### A.    Legal Standards

Under 28 U.S.C. § 2254(d), an application for a writ of habeas corpus shall not be granted unless the adjudication on the merits in State court was:

> (1) contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In *Williams v. Taylor*, 529 U.S. 362, 386-389 (2000), the Supreme Court construed this provision as requiring federal habeas courts to be highly deferential to the state court decisions under review. In *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398–1402 (2011), the Court reiterated the highly deferential nature of federal habeas review, and limited federal review "to the record that was before the state court that adjudicated the claim on the merits."

---

[4]Moreover, because Petitioner cannot make a gateway showing of actual innocence under *Schlup*, he also cannot prevail on his freestanding claim of actual innocence in Ground 42. *House v. Bell*, 547 U.S. 518, 555 (2006) (a freestanding claim of innocence requires an even stronger showing of innocence than a gateway showing under Schlup). Finally, to the extent Ground 42 is intended to constitute a due process challenge to the sufficiency of the evidence, such a claim is procedurally defaulted because it was not raised on direct appeal.

"'Clearly established Federal law' is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004), *cert. denied*, 546 U.S. 963 (2005). An "unreasonable application" of clearly established federal law occurs when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lambert*, 393 F.3d at 974 (citing *Williams*).

"The state court's application of law must be *objectively* unreasonable." *Williams*, 529 U.S. at 411 (emphasis added). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied clearly established federal law erroneously or incorrectly." *Woodford v. Visciotti*, 537 U.S. 19, 24–25 (2002) (internal citations omitted).

"[A] habeas court must determine what arguments or theories . . . could have supporte[d] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Pinholster*, 131 S. Ct. at 1402 (citing *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The standards

created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 790 (citations omitted).

To prove a deficient performance of counsel, a petitioner must demonstrate that trial counsel "made errors that a reasonably competent attorney as a diligent and conscientious advocate would not have made." *Butcher v. Marquez*, 758 F.2d 373, 376 (9th Cir. 1985). The test is whether the assistance was reasonably effective under the circumstances, and judicial scrutiny must be highly deferential, with the court indulging a presumption that the attorney's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

To establish the second prong of the *Strickland test*, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In determining whether a defendant was prejudiced by ineffective assistance of counsel, the court should examine whether the "'result of the proceeding was fundamentally unfair or unreliable.'" *United States v. Palomba*, 31 F.3d 1456, 1460–61 (9th Cir. 1994) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 368 (1993)).

### B.    Analysis

As noted above, Petitioner fully exhausted ten distinct claims of ineffective assistance of counsel. As such, this Court must determine whether the PCR courts' rejection of all ten claims was an unreasonable application of the standards set forth in *Strickland*.

#### 1.    Grounds One-Four: Arrest and Pre-trial Interrogation

Petitioner alleges trial counsel provided ineffective assistance because he did not assert Petitioner's right to counsel and did not advise Petitioner he should do so, that counsel failed to

obtain the police notes from Petitioner's pre-trial interrogations, that counsel failed to effectively argue for suppression of the pre-trial interrogation, and that counsel failed to effectively investigate and argue for the suppression of evidence resulting from the search of Petitioner's home in Mexico.

After Petitioner was apprehended in Mexico, two Clackamas County Deputies transported him by air to Los Angeles. When the plane entered United States airspace, one of the deputies advised Petitioner he was under arrest and advised him of his *Miranda* rights. Petitioner told the deputy he did not want to be uncooperative, but maybe he should talk with an attorney before he made a statement. After sitting silent for several minutes, Petitioner asked the deputy a series of questions. The only question asked by the deputy in response to one of Petitioner's questions was "Are you telling me it was self defense?" Petitioner did not respond to that inquiry.

The two deputies returned to Los Angeles one week later to escort Petitioner by airplane back to Oregon. The deputies asked Petitioner if he remembered his *Miranda* rights. Petitioner said he did and that he understood those rights. The deputies did not ask Petitioner any questions, but again Petitioner asked one of the deputies a series of questions.

Once trial counsel was engaged to represent Petitioner, he left messages with the Clackamas County officers to let them know he was involved in the case and was asserting Petitioner's right to remain silent. In addition, trial counsel placed calls to the public defender's office in Los Angeles, where Petitioner was held before his transport to Oregon, and was informed by an individual at that office that Petitioner had been instructed that he was not to speak to anyone, including the police, until trial counsel could meet with him.

Trial counsel filed a motion to suppress the statements Petitioner made to officers during the two flights. The trial judge issued an Order Finding of Fact and Conclusions of Law in which he concluded Petitioner invoked his right to remain silent on the first flight, and that the deputy's question to Petitioner regarding self-defense and Petitioner's response to it were suppressed. The judge issued another conclusion of law that Petitioner's initial statement on the second flight was an explanation of his exercise of the right to remain silent and was suppressed. However, the judge found the questions Petitioner asked on both flights were freely and voluntarily made and not the result of custodial interrogation, and were admissible.

The state presented evidence both at trial and at sentencing that Petitioner's wife expressly consented to the search of Petitioner's house in Mexico and voluntarily provided evidence from the house to the authorities. Petitioner's wife testified at sentencing that she did not understand the consent to search form which an officer read to her and had her sign because of a language barrier, but the Spanish-speaking officer testified he had no difficulty communicating with her and that she understood and consented.

Petitioner presented all of these claims to the PCR trial judge. Petitioner failed, however, to present any evidence of what his trial counsel should have done differently with respect to any of these claims. Moreover, Petitioner has not established that if trial counsel had done anything differently, the ultimate outcome of the trial would have been different. As such, Petitioner has not established that the PCR court's decision denying relief was an unreasonable application of *Strickland*.

###     2.     Ground Five - Right to be Present

The constitutional right to be present at hearings is rooted largely in the Confrontation Clause of the Sixth Amendment. However, the Supreme Court has recognized that the right is protected by the Due Process Clause in some instances where the defendant is not actually confronting witnesses or evidence against him. *United States v. Gagnon*, 470 U.S. 522, 526 (1985). Specifically, the Court held that a defendant has a due process right to be present at a hearing "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defendant against the charge . . . [T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *Gagnon*, 470 U.S. at 526 (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105–106 (1934)).

Petitioner alleges "[t]here were many meetings between [trial counsel], the judge and the prosecutor where many important things involved in the case were decided, and [trial counsel] failed to have them recorded, or put on the record, or even notify petitioner about them. Petitioner did not, however, identify in the PCR proceeding any specific meetings or introduce any evidence they took place. Nor does Petitioner present any evidence to this Court that he was excluded from any hearing "reasonably substantial, to the fullness of his opportunity to defend against the charge," or that he was excluded from any part of his trial.

The record reflects that the jury presented a question to the trial judge as to the number of jurors necessary to agree on the extreme emotional distress defense. Trans. Vol. 10, pp. 3-5. The judge discussed the question with Counsel in chambers and gave them an opportunity to present their positions on the record in open court. *Id.* The judge's meeting with trial counsel to explain

the jurors' question is the only instance in the trial record in which it appears Petitioner was not present.

Even if Petitioner had some due process right to attend that meeting, Petitioner presents no evidence of how his attorney's failure to ensure his presence there in any way affected the outcome of the trial. As such, the PCR trial court's decision denying relief on this claim was not an unreasonable application of *Strickland*.

### 3. Grounds Six and Seven - Decision to Assert Defense of Extreme Emotional Distress and Evidence of Petitioner's Juvenile Record

In Ground Seven, Petitioner complains about trial counsel's decision to present a defense of Extreme Emotional Distress ("EED") instead of requesting a lesser-included offense instruction for manslaughter. In Ground Six, Petitioner argues that had trial counsel not raised the EED defense, the jury would not have heard about his juvenile record. The Oregon PCR trial court found both claims lacked merit.

Under Oregon law, there are two ways a jury might reach a verdict of Manslaughter in the First Degree. Under the first theory, a defendant commits manslaughter by committing criminal homicide recklessly under circumstances manifesting extreme indifference to human life. Or. Rev. Stat. § 163.118(1)(a). The second theory of Manslaughter in the First Degree involves criminal homicide committed intentionally when under the influence of extreme emotional disturbance. Or. Rev. Stat. § 163.118(1)(b).

In the state PCR proceeding, Petitioner's trial counsel submitted an affidavit in which he explained the decision to present the second theory of manslaughter, EED, rather than the first. As he stated:

15 - FINDINGS AND RECOMMENDATION -

4.      Petitioner next brings up the defense of extreme emotional disturbance. This defense can often be a double-edged sword. Early on it was evident that this was the case in petitioner's trial. Relatively early in the case, I hired a law clerk (at my own expense) to prepare a short brief regarding the defense of extreme emotional disturbance and provided petitioner with this outline of that as a defense. As I indicated earlier, petitioner is an intelligent man and certainly is not fearful of asking questions or expressing his opinion. We discussed this defense at length, including the down side of calling an expert witness in presenting that defense. Petitioner was advised of, and aware of, both positive and negative issues in presenting that defense and I believe at the time he understood the distinction between presenting his juvenile record as evidence against him, as opposed to presenting it as history in support of the defense.

* * *

11.     The jury instructions that were given regarding self defense are part of the official record. He also questions the lack of the court to instruct the jury on Manslaughter as a lesser included offense. The issue is any evidence to support such an instruction. In addition it would fly in the face of the defense we presented at trial. It was difficult enough to present over 20 stab and slash wounds as self defense. Calling them reckless would have been ridiculous.

Resp. Exh. 113, pp. 3, 5.

Trial counsel made a reasonable strategy decision to avoid presenting the lesser-included instruction under the first theory of Manslaughter. Given the facts of the case, the EED defense was the best available to Petitioner. As trial counsel argued, the victim's extensive abuse of Petitioner over his lifetime caused Petitioner to fly into such a rage that he felt it was necessary to cause such extensive injuries on the victim in order to protect himself. Counsel then sought and obtained a jury instruction that would allow the jury to vote on Manslaughter through the use of the EED defense. Not only did this provide the jury a plausible lesser-included option, but it allowed the jury to understand and put in context Petitioner's self-defense claims.

With respect to Petitioner's juvenile record, trial counsel indicates he discussed the EED defense with Petitioner at length, and that he explained one downside of the defense was calling an expert witness and the presentation by the expert to the jury of facts from Petitioner's juvenile record. Trial counsel believed Petitioner understood the distinction between presenting his juvenile record as evidence against him versus presenting the juvenile record as history in support of his defense. In any event, in light of the overwhelming evidence of Petitioner's actions, Petitioner has not established that inclusion of his juvenile record as history in support of his defense caused Petitioner any prejudice.

Trial counsel made a reasonable strategic decision to present an EED defense instead of the alternate theory of manslaughter by committing criminal homicide recklessly under circumstances manifesting extreme indifference to human life. The EED defense supported Petitioner's self-defense claim, which was otherwise unsupported by the evidence. The PCR court's denial of relief on the claims alleged in Ground Six and Seven was not an unreasonable application of *Strickland*, and is entitled to deference in this Court.

### 4. Ground Eight - Misstating the Defense Burden on EED in Closing Argument

In Ground Eight, Petitioner argues trial counsel was ineffective because during closing argument he told the jury that Petitioner had to prove self-defense by a preponderance of the evidence. Petitioner further argues there was no instruction given to the jury correcting trial counsel's statement.

In his closing argument, trial counsel made the following statements:

> Extreme emotional disturbance is something that the defense has to show you, prove to you through lay witnesses and/or expert witnesses by a preponderance of the evidence, a preponderance, a much lower standard than beyond a reasonable doubt, much lower. If you find extreme emotional disturbance by a preponderance of the evidence, I ask you to mark it down on the verdict form.

> Self-defense. Self-defense is also the same standard. It's a little different. We've -- the defense also through testimony has to show you self-defense by a preponderance of the evidence and then the State has to disprove that beyond a reasonable doubt yet again. They haven't done that.

Trans. Vol. 7, p. 93.

The trial judge instructed the jury on self-defense and extreme emotional disturbance as

follows:

> The defense of self-defense has been raised. And a person is justified in using physical force upon another person to defend themselves from what they reasonably believe to be the use or imminent use of unlawful physical force. In defending, a person may only use that degree of force which he reasonably believes to be necessary. And the burden is on the State to prove beyond a reasonable doubt that the defendant did not act in self-defense.

* * *

> An intentional homicide that would otherwise constitute Murder is reduced to Manslaughter in the First Degree if at the time of the homicide the defendant was under the influence of an extreme emotional disturbance. The affirmative defense of extreme emotional disturbance has been raised.

> To establish the defense of an extreme emotional disturbance, the defendant must prove by a preponderance of the evidence the following three elements. The first is if the defendant committed an intentional homicide, he was acting under an extreme emotional disturbance. This means that the defendant was under the influence of an emotional disturbance to the extent that he lost the capacity to control himself and forego the homicide. This could be brought on by either a sudden provocation or other event that aroused extreme mental or emotional disturbance.

The second element is if you find the defendant acted under the influence of an extreme emotional disturbance, you must then determine whether there was a reasonable explanation for it.

\* \* \*

The third element is if you find that there was an extreme emotional disturbance and that there was a reasonable explanation for it, then you must determine whether extreme emotional disturbance was a result of the defendant's own intentional, knowing, reckless or criminally negligent act. If the extreme emotional disturbance was a result of such an act on the defendant's part, the Murder is not to be reduced to manslaughter based on extreme emotional distress.

If the defendant proves all three of the elements I've just listed by a preponderance of the evidence, then the intentional homicide that would otherwise constitute murder is instead Manslaughter in the First Degree.

Trans. Vol 7, pp. 119-121. The trial judge also instructed the jury that "[t]he attorneys' statements and arguments are not evidence. If your recollection of the evidence is different from the attorneys' recollection, you must rely upon your own memory." Trans. Vol. 7, p. 113.

The trial judge advised the jurors as to the different standards respecting self-defense and the affirmative defense of EED. The jurors were properly instructed that the State had the burden to prove beyond a reasonable doubt that Petitioner did not act in self-defense. They were also properly instructed that in order to find Petitioner suffered from EED during the murder they had to find certain elements by a preponderance of the evidence. Under these circumstances, the state PCR court's decision that Petitioner was not entitled to relief on this claim of ineffective assistance was not an unreasonable application of *Strickland*. Counsel's statement did not result in prejudice.

### 5.    Ground Nine - Failure to Object to Prosecutor's Closing Statement

In Ground Nine, Petitioner argues trial counsel failed to object to statements made by the prosecutor in his closing argument regarding a bag in which the victim stored his gun paraphernalia. Petitioner claims the prosecutor in essence called Petitioner's trial attorney a liar when discussing the importance of the bag.  According to Petitioner, the prosecutor made statements that the gun paraphernalia bag was in evidence and that Petitioner's trial counsel could have obtained it and presented it to the jury if he wanted to do so.  Instead, Petitioner argues, the prosecutor told the jury the bag obviously had no importance since Petitioner's trial attorney did not bother to present it in evidence.

In his closing argument, Petitioner's trial attorney drew the jurors' attention to the existence of the bag in the context of his argument that the investigating officers decided at the scene of the crime what had happened and didn't care to examine any evidence that might refute that idea:

> You may recall I asked a couple of the crime scene investigators about a bag of gun paraphernalia, speed-loaders, spare clips.  They all remember seeing it.  No one remembers who has it or what happened to it, but they remember seeing it.  But it didn't matter to them because they'd already made up their mind what happened. It doesn't matter that -- that there was a bunch of guns missing, some paraphernalia left, clips.  They'd already decided what happened, so you know, what does it matter to them?  It just matters to my client.  It doesn't matter to them.

Trans. Vol. 7, p. 74.

The prosecutor addressed this argument and trial counsel's statement about the bag in his rebuttal:

> Now, you know, we're faulted for bringing you evidence that isn't, like, totally complete.  We bring you everything we could possibly get, everything we can possibly get.

> [Defense counsel] mentioned this gun paraphernalia that we apparently didn't bring you. I'd ask you to recall the testimony of Miss Sandy King, the criminalist -- or excuse me, the crime -- the evidence room person that testified here, the blonde lady. On August 28th of 1997, [co-counsel], myself, and [defense counsel] examined every piece of evidence up at the Clackamas County Sheriff's Office property room. That evidence is not the property of the State. That evidence is available to show the truth in this case, and it's available to [defense counsel] if he wants it. All he has to do is make a phone call. Perhaps Detective Beckwith will get and bring it to court if he thinks it's that important. But I suggest to you that it's not that important.

Trans. Vol. 7, p. 103.

To establish a claim of ineffective assistance of counsel resulting from counsel's failure to object during closing argument, a petitioner must show that the prosecutor made an egregious statement, and that counsel failed to object. *United States v. Necoechea*, 986 F.2d 1273, 1281 (9th Cir. 1993). As the Ninth Circuit explained:

> Because many lawyers refrain from objecting during opening statement and closing argument, absent egregious misstatements, the failure to object during closing argument and opening statement is within the "wide range" of permissible professional legal conduct.

*Id.* (citing *Strickland*, 466 U.S. at 669).

The prosecutor's statements about the gun paraphernalia bag and its availability to defense counsel are not egregious statements to which defense counsel should have objected. Contrary to Petitioner's argument, the prosecutor did not call or imply defense counsel was a liar. Instead, the prosecutor used his rebuttal to counter defense counsel's argument that the State did not adequately investigate the crime or present all the relevant evidence. The PCR court's decision denying relief on this claim was not an unreasonable application of *Strickland*.

### 6. Ground Ten - Failure to Object to Departure Sentence in Absence of Finding of Aggravating Facts

Finally, in Ground Ten Petitioner argues trial counsel was ineffective because he should have argued that the trial court was required to make findings in order to substantiate a departure sentence in Petitioner's case. Petitioner contends the trial judge permissibly sentenced Petitioner to a mandatory 10-year sentence under the 1993 version of Or. Rev. Stat. § 163.115(3)(b), but that the court was not authorized to impose a 15-year minimum term under Or. Rev. Stat. § 163.115(3)(c) without first making findings of fact that would substantiate a departure sentence.

At the time Petitioner was sentenced, § 116.115(3) provided:

(a) A person convicted of murder shall be punished by imprisonment for life.

(b) When a defendant is convicted of murder under this section, the court shall order that the defendant shall be confined for a minimum of 10 years without possibility of parole, release on work release or any form of temporary leave or employment at a forest or work camp.

(c) When a defendant is convicted of murder under this section, the court, in addition to the minimum required by paragraph (b) of this subsection, may order that the defendant shall be confined for a minimum term of up to an additional 15 years without possibility of parole, release on work release or any form of temporary leave or employment at a forest or work camp.

Or. Rev. Stat. § 116.115 (1993).

In 1989, the Oregon legislature had passed a sentencing guidelines law, which included the following provision:

The statutes that define offenses impose a duty upon the court having jurisdiction to pass sentence in accordance with this section or, for felonies committed on or after November 1, 1989, in accordance with rules of the State Sentencing Guidelines Board *unless otherwise specifically provided by law.*

Or. Rev. Stat. § 137.010(1) (emphasis added). In *State v. Farmer*, 317 Or. 220, 233, 856 P.2d 623 (1993), the Oregon Supreme Court held that "minimum sentences for murder under Or. Rev. Stat. § 163.115(3)(b) and (c) were not repealed by enactment of the sentencing guidelines."

In *Farmer*, the court referred to its opinion in *State v. Morgan*, 316 Or. 553, 856 P.2d 612 (1993). In *Morgan*, the court had explicitly stated that both the 10-year minimum under subsection (3)(b) and the additional 15-year minimum under subsection 3(c) are determinate sentences within the meaning of Or. Rev. Stat. § 136.637, which authorizes the imposition of a determinate sentence (instead of a presumptive sentence under the guidelines) so long as it exceeds the presumptive sentence. *Id.* at 556-558. As the court stated in *Farmer*, "[m]inimum sentences for murder under Or. Rev. Stat. § 163.115(3)(b) and (c) were not repealed by enactment of the sentencing guidelines." *Farmer*, 317 Or. At 223 (citing *Morgan*, 316 Or. at 558).

Here, the trial judge imposed the mandatory minimum 10-year sentence pursuant to § 163.115(3)(b) and also the additional 15-year minimum consecutive to that under § 163.115(3)(c). The judge stated on the record that the information in the Pre-Sentence Investigation Report and the facts of the case made that sentence appropriate. Imposition of the consecutive 15-year term pursuant to § 116.115(3)(c) was not a "departure" sentence requiring a finding of aggravating facts under the record, so trial counsel was not ineffective for failing to object on this basis. The PCR court's decision denying relief on this claim was not an unreasonable application of *Strickland*.

## **RECOMMENDATION**

For these reasons the Second Amended Petition for Writ of Habeas Corpus (#55) should be DENIED and judgment of dismissal should be entered. Because Petitioner has not made a

substantial showing of the denial of a constitutional right, a certificate of appealability should be DENIED.  See 28 U.S.C. § 2253(c)(2).

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review.  Objections, if any, are due October 1, 2012.  If no objections are filed, review of the Findings and Recommendation will go under advisement that date.

A party may respond to another party's objections within 14 days after the objections are filed. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or on the latest date for filing a response.

DATED this ___ day of September, 2012.

John V. Acosta
United States Magistrate Judge

\\Local1\SHARES\Shares\Acosta\09-170webber0914f&r.wpd